**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**JASMINE ROBINSON and**
**QWANDAIRUS DAVIS, on behalf of**
**themselves and all others similarly**
**situated,**

                **Plaintiffs,**

**vs.**

**P.A.M. TRANSPORT, INC., a**
**Domestic For-Profit Corporation,**

                **Defendant.**

_____/

**CASE NO.:  5:23-CV-05123-TLB**

## <u>COMPLAINT & DEMAND FOR JURY TRIAL</u>

Plaintiffs, JASMINE ROBINSON and QWANDAIRUS DAVIS, on behalf of themselves

and all others similarly situated, alleges, upon personal knowledge as to themselves and upon

information and belief as to others, as follows:

## <u>INTRODUCTION</u>

1.      This is a class action brought by commercial Truck Driver applicants who applied

for work for Defendant, P.A.M. TRANSPORT, INC. (hereafter "Pam Transport" or "Defendant"),

alleging violations of the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* ("ADA"), the

North Carolina Persons with Disabilities Protection Act, N.C. G.S. §168A-1 *et seq.* ("PDPA"), the

North Carolina Equal Employment Practices Act, N.C. G.S. § 143-422.2, *et seq.* ("EEPA")*,* and

the Arkansas Civil Rights Act of 1993, AR Code § 16-123-107 ("ACRA"). Plaintiffs, on behalf of

themselves and all others similarly-situated, are seeking damages including back pay, front pay,

punitive damages, lost benefits, compensatory damages, emotional distress, pain and suffering,

injunctive relief, reasonable attorneys' fees and costs and any other relief to which Plaintiffs are

entitled, including, but not limited to, equitable and injunctive relief.

2.    According to its website, Pam Transport provides nationwide dry van truckload, expedited truckload, intermodal, and logistics services to the manufacturing, retail, and automotive industries. *See* www.pamtransport.com/about/

3.    Plaintiff, JASMINE ROBINSON, and those similarly situated, applied for Truck Driver positions across the country in different cities and states to work for Pam Transport. Their applications for employment were rejected and they were never hired despite being as qualified and/or more qualified than other applicants who were hired.

4.    Plaintiff, QWANDAIRUS DAVIS, and those similarly situated, applied for Truck Driver positions across the country in different cities and states to work for Pam Transport. Their applications for employment were rejected and they were never hired despite being as qualified and/or more qualified than younger applicants who were hired.

5.    Pam Transport prefers not to hire, and actively eliminates applicants from consideration for hire on the basis of their disabilities and/or perceived disabilities for its available Truck Driver positions despite such applicants being fully qualified, licensed, and experienced commercial truck drivers. Rather, Pam Transport, puts a strong emphasis on hiring applicants who do not have sleep apnea at all and/or who they perceive do not have sleep apnea which Pam Transport defines as any applicant who has a Body Mass Index ("BMI") rating of 41 or less.

**DISCRIMINATION BASED ON DISABILITY AND/OR PERCEIVED DISABILITY**

6.    PAM TRANSPORT's discriminatory culture and practices have distributed the benefits of its success unequally—systematically eliminating applicants who do have sleep apnea, regardless if that person is willing to get tested via a sleep study for sleep apnea, or, already has a reasonable accommodation in place via ongoing CPAP machine usage while sleeping and/or via the Uvulopalatopharyngoplasty surgery.  Pam Transport refuses to engage in the interactive process

and/or allow for a reasonable accommodations for sleep apnea by systematically eliminating such applicants from their application pool once they receive an applicant's medical history via the DOT physical.  PAM transport also refuses to consider for hire anyone who has a BMI of 42 or greater because it perceives and/or regards such applicants as having sleep apnea, regardless of whether the applicant does have a sleep apnea diagnosis or not.

7.      Pam Transports' policies and practices were intentionally put in place to achieve a goal of hiring non-disabled drivers and/or drivers who they perceived/regarded as non-disabled. Specifically, via Pam Transports' recruiting department, recruiters for Pam Transport have been instructed by Pam Transports' owners, officers, directors and managers to avoid hiring applicants with sleep apnea (regardless if accommodated/remediated or not) and/or to avoid hiring applicants who they perceive have sleep apnea because their BMI is 42 or greater.

8.      Pam Transport has further instructed its recruiters to not disclose to applicants that they are being denied employment for medical reasons entirely and to instead advise the applicants that they are "still considering other driver applications" to actively conceal their discriminatory intentions and avoid lawsuits as well as an EEOC enforcement action.

9.      Pam Transport maintains hiring policies and practices which intentionally eliminates Truck Driver applicants solely based on their disability and/or perceived disability, resulting in the disproportionate employment of drivers who do not have sleep apnea and/or are not perceived as or regarded as having sleep apnea by Pam Transport. Pam Transport further refuses to offer applicants the opportunity to participate in a sleep study designed to diagnose sleep apnea and provide medical options to accommodate sleep apnea for purposes of driving safely. Instead, Pam Transport prefers not to deal with the hassle of having to potentially provide an applicant with a reasonable accommodation for their disability (sleep apnea) and/or perceived

3

disability by concealing why applicants are being denied in violation of state/federal anti-disability discrimination laws.

10.     Upon information and belief, all allegations regarding Defendant's systemic discriminatory hiring practices will be corroborated from eye-witness testimony from members of Defendant's recruitment department and existing company documents from Defendant.

## JURISDICTION AND VENUE

11.     This Court has original subject matter jurisdiction over the ADA claims pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over claims brought under North Carolina and Arkansas state law as they arise from the same transaction and/or occurrence and/or common nucleus of operative facts.

12.     The United States District Court for the Western District of Arkansas has personal and general jurisdiction over Defendant because the company does business in Arkansas. Further, Defendant's corporate headquarters is located in the Western District of Arkansas in Washington County, Arkansas. Further, the acts complained of and giving rise to the claims alleged occurred in and emanated in the Western District of Arkansas.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the Western District of Arkansas and Defendant's corporate headquarters are located in the Western District of Arkansas.

14.     Plaintiff, Qwandairus Davis, has exhausted his administrative remedies and complied with all statutory prerequisites for his disability discrimination claim(s) under state and federal law. Specifically, on or about December 14, 2022, Plaintiff filed a class charge of disability discrimination under the ADA and Arkansas state law with the Equal Employment Opportunity Commission ("EEOC") on behalf of himself and all other similarly-situated applicants alleging

systemic disability discrimination in Defendant's hiring practices. On April 26, 2023, the EEOC issued a notice of right to sue and the instant lawsuit was filed within 90 days of the issuance of the EEOC's right to sue letter. In addition, based on Pam Transport's representation that Mr. Davis was being considered amongst other applicants and was not being denied employment for medical reasons, i.e., sleep apnea and/or being perceived as having sleep apnea, Mr. Davis was not required to exhaust any administrative remedies via the Department of Transportation regulations because Pam Transport did not "dispute the drivers medical qualification based on a conflict of medical opinion" as it was required to do under 49 C.F.R. § 391.47. If Pam Transport was not going to hire Mr. Davis on any medically related basis, then it would have needed to dispute his medical qualification based on a conflict of medical opinion which would have required Mr. Davis to potentially take part in the DOT administrative processes prior to filing suit.  Because Pam Transport did not do so, then no such administrative pre-requisite with the DOT exists in this case.

15.     Plaintiff, Jasmine, has exhausted her administrative remedies and complied with all statutory prerequisites for her disability discrimination claim(s) under state and federal law. Specifically, on or about March 24, 2023, Plaintiff filed a class charge of disability discrimination under the ADA, and Arkansas/North Carolina state laws with the Equal Employment Opportunity Commission ("EEOC") on behalf of herself and all other similarly-situated applicants alleging systemic disability discrimination in Defendant's hiring practices. On May 3, 2023, the EEOC issued a notice of right to sue and the instant lawsuit was filed within 90 days of the issuance of the EEOC's right to sue letter.  In addition, based on Pam Transport's representation that Ms. Robinson was being considered amongst other applicants and was not being denied employment for medical reasons, i.e., sleep apnea and/or being perceived as having sleep apnea, Ms. Robinson was not required to exhaust any administrative remedies via the Department of Transportation

regulations because Pam Transport did not "dispute the drivers medical qualification based on a conflict of medical opinion" as it was required to do under 49 C.F.R. § 391.47. If Pam Transport was not going to hire Ms. Robinson on any medically related basis, then it would have needed to dispute her medical qualification based on a conflict of medical opinion which would have potentially required Ms. Robinson to take part in the DOT administrative processes prior to filing suit.  Because Pam Transport did not do so, then no such administrative pre-requisite with the DOT exists in this case.

16.     Any and all other prerequisites to the filing of this suit have been met.

## PARTIES

### PLAINTIFF QWANDAIRUS DAVIS

17.     Plaintiff, QWANDAIRUS DAVIS, is a Department of Transportation licensed commercial truck driver, who lives in Arkansas.

18.     On or about March 17, 2023, Mr. Davis applied for an available commercial Truck Driver position with Defendant. Plaintiff provided an application/resume to Defendant along with a copy of Plaintiff's commercial Driver's License.

19.     Plaintiff's employment application was rejected on or around March 20, 2023, by Defendant after Defendant received information regarding Plaintiff's disability and/or Plaintiff's body mass index during the application process after he submitted to a medical physical examination despite the fact that Plaintiff passed the medical physical exam and was cleared to drive per DOT regulations.

20.     Upon information and belief, non-disabled and/or persons who were not perceived as being disabled were hired for the position(s) Plaintiff applied for, but was not hired for.

21.     Upon information and belief, Plaintiff was denied employment for available

commercial Truck Driver positions due to Defendant's systemic discriminatory policies and practices.

## PLAINTIFF JASMINE ROBINSON

22.     Plaintiff, JASMINE ROBINSON, is a Department of Transportation licensed commercial truck driver, who lives in North Carolina.

23.     On or about March 9, 2023, Plaintiff applied for an available commercial Truck Driver position with Defendant. Plaintiff provided an application/resume to Defendant along with a copy of Plaintiff's commercial Driver's License.

24.     Plaintiff's employment application was rejected on or around March 13, 2023, by Defendant after Defendant received information regarding Plaintiff's disability and/or Plaintiff's body mass index during the application process after Plaintiff submitted to a medical physical examination despite the fact that Plaintiff was cleared to drive per DOT regulations.

25.     Upon information and belief, non-disabled and/or persons who were not perceived as being disabled were hired for the position(s) Plaintiff applied for, but was not hired for.

26.     Upon information and belief, Plaintiff was denied employment for available commercial Truck Driver positions due to Defendant's systemic discriminatory policies and practices.

## DEFENDANT PAM TRANSPORT

27.     Defendant, PAM TRANSPORT, is an Arkansas corporation formed under the laws of the state of Arkansas with its principal place of business located at 297 West Henri de Tonti Blvd., Tontitown, Arkansas 72770.

28.     Upon information and belief, Defendant maintains control, oversight, and direction over the operation of its Truck Drivers on a nation-wide basis, including its employment and hiring practices.

7

29.     Defendant received Plaintiffs', and those similarly-situated, applications for employment for commercial Truck Driver positions and rejected their applications, with the purpose and effect of denying them employment because of their disability and/or because Defendant perceived them/regarded Plaintiffs as being disabled.

30.     As of the filing of this Complaint, Defendant's website indicates it's currently recruiting "Experienced Drivers" and those driver's needing CDL (commercial driver's license" training. See www.PamTransport.com/contact/

31.     Further, according to Defendant's LinkedIn page, Defendant has grown into an international company with more than 2,000 trucks and 6,000 trailers. Defendant's LinkedIn also indicates the company size to be between 1,001 and 5,000 employees. See www.LinkedIn.com/Company/Pam-Transport

32.     Thousands of potential Class Members have applied, attempted to apply, or have been interested in applying to the Available Positions during the relevant time period.

## FACTUAL ALLEGATIONS

## PAM TRANSPORT'S RECRUITING AND HIRING PRACTICES

33.     Defendant's recruiting and hiring policies, patterns, and/or practices discriminate against disabled and/or perceived to be disabled applicants because they disfavor hiring those applicants who have sleep apnea and/or who they perceive to have sleep apnea because their BMI rating is 42 or greater.

34.     Defendant engages in a pattern and practice of directing its in-house commercial Truck Driver recruiters to decline and reject employment to qualified Truck Driver applicants who have sleep apnea, regardless if it can be ameliorated with a reasonable accommodation or not, and/or who they perceive/regard as having sleep apnea because their BMI rating is 42 or greater

despite the applicants being fully qualified, medically cleared, possessing a commercial driver's license and experienced.

35.     Specifically, in furtherance of its discriminatory policy of rejecting Truck Driver applicants whose documentation reveal they either have sleep apnea and/or are perceived as having sleep apnea, which Defendant specifically defines as anyone with a BMI rating of 42 or greater, Defendant explains to those applicants the company is still reviewing all applications, but will keep their application on file without the intention of ever hiring them.

36.     Defendant's owners have told its officers, directors, and high-ranking members of management to actively coach its recruitment department on how to avoid EEOC charges of discrimination and lawsuits based on disability discrimination because Defendant is aware that it's hiring policies and practices violate the law. As such, Defendant's actions are willful and with malice.

37.     Upon information and belief, when Truck Driver applicants who either have sleep apnea and/or are perceived as having sleep apnea by Defendant because their BMI rating is 42 or greater, apply for employment with Defendant, then Defendant intentionally screens them out and denies them employment opportunities because of their disability and/or because they're perceived as being disabled per Defendant's own criteria.  Defendant's nation-wide hiring responsibilities fall entirely on Defendant's recruitment department which has over a dozen or more in-house recruiters who work full-time for Defendant to assist Defendant in filling available commercial truck driver positions for Defendant.

38.     Defendant has engaged in a systematic pattern and practice of discriminating against individuals (including Plaintiffs) who have sleep apnea and/or are perceived as having sleep apnea by Defendant by systematically excluding such applicants from positions for which

9

they are well-qualified. Upon information and belief, Defendant's discriminatory conduct was intentional.

39.     Upon information and belief, Defendant's management (which includes the owners, CEO, officers, directors and management-level employees) specifically instructed and demanded Defendant's recruiting in-house staff to carry out systemic disability discrimination in hiring.  Defendants further directed such recruiting staff to conceal Defendant's discriminatory practices to avoid lawsuits and EEOC complaints by not telling the applicants why they were not being hired based on some medically related reason, but instead falsely telling applicants they were still considering more applicants and/or that other applicants were more qualified.

40.     Defendant discriminated against the above-described class of similarly situated individuals on the basis of their disability and/or perceived disability, including by implementing policies and practices which were designed to systematically recruit and hire Truck Drivers under who were not disabled and/or who Defendant did not perceive as being disabled. This action seeks to end Defendant's discriminatory policies, patterns, and/or practices, and to make the proposed Nationwide Class whole through the following remedies: injunctive relief to remedy systemic disability discrimination; an award of back pay and front pay; compensatory and punitive damages; and attorneys' fees and costs.

## CLASS ACTION ALLEGATIONS UNDER THE ADA, PDPA, EEPA and ACRA

41.     Plaintiffs bring this class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3) and (c)(4) seeking monetary damages and other make whole relief, as well as liability-phase injunctive and declaratory relief under the ADA, PDPA, EEPA and ACRA, on behalf of a class of all applicants who were not hired for available commercial truck driver positions, who either had sleep apnea, but were still qualified for the position through a reasonable

accommodation for sleep apnea or a class of applicants who were perceived as/regarded as having sleep apnea by Defendant because their BMI rating was 42 or greater, who applied for available positions nation-wide, and were not hired, any time from May 28, 2022, through the resolution of this action under the ADA, any time from March 13, 2020 through the resolution of this action for claims under the PDPA or EEPA, and anytime from March 13, 2022, through the resolution of this action for claims under ARCA.  Plaintiffs reserves the right to amend the definition of the class based on discovery or legal developments.

42.     Plaintiffs are members of the classes they seek to represent.

43.     The members of the class identified herein are so numerous that joinder of all members is impracticable. According to Defendant's own website it is allegedly international company with more than 2,000 trucks and 6,000 trailers. Defendant's LinkedIn page also indicates the company size to be between 1,001 and 5,000 employees.  Although Plaintiffs do not know the precise number of all disabled and/or perceived to be disabled applicants to Defendant, the number is far greater than can be feasibly addressed through joinder. As noted above, Defendant has a recruiting department of over a dozen full-time employees who are constantly recruiting and onboarding new commercial truck drivers for Defendant.

44.     There are questions of law and fact common to the class, and these questions predominate over any questions affecting only individual members. Common questions include, among others:

(a)     whether Defendant's policies or practices exclude prospective applicants who have sleep apnea without regard to whether they can still be qualified with a reasonable accommodation;

(c)     whether Defendant's policies or practices discriminate against applicants who they perceive as and/or regard as having sleep apnea because those applicants have BMI rating of 42 or

greater, without regarding to whether they actually have sleep apnea or can still be qualified for the position with a reasonable accommodation;

(d)     whether Defendant intentionally disfavors applicants with sleep apnea and/or intentionally disfavors applicants who they perceive/regard as having sleep apnea because such applicants have a BMI rating of 42 or greater;

(e)     whether Defendant's policies and practices violate the ADA and all other state laws applicable to the Plaintiffs;

(f)     whether Defendant's challenged policies or practices are necessary to its business operations;

(g)     whether not having sleep apnea is a bona fide occupational qualification; and

(h)     whether equitable remedies, injunctive relief, economic damages, compensatory damages, and punitive damages for the class are warranted.

45.     The Representative Plaintiff Davis claims are typical of the claims of the Federal ADA class and Arkansas Class under ACRA.

46.     The Representative Plaintiff, Quandairus Davis, will fairly and adequately represent and protect the interests of the members of the "Federal ADA Class", which consists of applicants from all States in the United States of America, and the "Arkansas Class" which consists of all applicants who, in addition to having claims under the ADA, also have under the ACRA. Plaintiff has retained counsel competent and experienced in complex class actions, employment discrimination litigation, and the intersection thereof.

47.     The Representative Plaintiff, Jasmine Robinson, claims are typical of the claims of the Federal ADA class, which consists of applicants from all States in the United States of America with claims under the ADA, and the "North Carolina Class" which consists of all applicants who,

12

in addition to claims under the ADA, also have claims under the PDPA and EEPA.

48.     The Representative Plaintiff, Jasmine Robinson, will fairly and adequately represent and protect the interests of the members of the Federal ADA Class and North Carolina Class under the PDPA and EEPA North Carolina state laws. Plaintiff has retained counsel competent and experienced in complex class actions, employment discrimination litigation, and the intersection thereof.

49.     Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted and/or refused to act on grounds generally applicable to the class, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the class as a whole. The class members are entitled to injunctive relief to end Defendant's common, uniform, unfair, and discriminatory policies and practices.

50.     Class certification is also appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. The class members have been damaged and are entitled to recovery as a result of Defendant's common, uniform, unfair, and discriminatory policies and practices. The propriety and amount of punitive damages are based on Defendant's conduct, making these issues common to the class.

## CLAIMS OF REPRESENTATIVE PLAINTIFF QWANDAIRUS DAVIS

51.     Plaintiff, Qwandairus Davis, is an experienced Truck Driver holding a Department of Transportation issued commercial driver's license who lives in Arkansas.

52.     Plaintiff, Qwandairus Davis, applied for employment with Defendant on or about March 17, 2023. Specifically, Plaintiff Davis applied for a commercial Truck Driver position.

53.     Defendant was aware of Plaintiff Davis' disability and/or perceived Mr. Davis as being disabled, at the time of his application for employment.

54.     Defendant was aware that Plaintiff's commercial driver's license was in good standing with the Department of Transportation at the time Plaintiff applied for employment.

55.     On or about March 20, 2023, Plaintiff Davis was denied employment by Defendant due to Defendant's discriminatory practices and policies.

56.     Instead, on information and belief, Defendant hired a non-disabled applicant and/or someone who Defendant perceived/regarded as being non-disabled, who was also less qualified than Plaintiff Davis to fill the position.

57.     On or about April 12, 2023, Plaintiff filed a class charge of disability discrimination with the EEOC specifically alleging class-wide federal and Arkansas state law claims on behalf of all similarly situated disabled applicants and/or applicants who were perceived as/regard as being disabled by Defendant who were denied employment by Defendant because of their disability and/or perceived disability.

58.     On April 26, 2023, the EEOC issued a Notice of Determination and Right to Sue.

**CLAIMS OF REPRESENTATIVE PLAINTIFF JASMINE ROBINSON**

59.     Plaintiff, Jasmine Robinson, is an experienced Truck Driver holding a Department of Transportation issued commercial driver's license who lives in North Carolina.

60.     Plaintiff, Jasmine Robinson, applied for employment with Defendant on or about March 9, 2023. Specifically, Plaintiff Robinson applied for a commercial Truck Driver position.

61.     Defendant was aware of Plaintiff Robinson's disability and/or perceived Ms. Robinson as being disabled, at the time of her application for employment.

62.     Defendant was aware that Plaintiff's commercial driver's license was in good

14

standing with the Department of Transportation at the time Plaintiff applied for employment.

63.     On or about March 13, 2023, Plaintiff Robinson was denied employment by Defendant due to Defendant's discriminatory practices and policies.

64.     Instead, on information and belief, Defendant hired a non-disabled applicant and/or someone who Defendant perceived/regarded as being non-disabled, who was also less qualified than Plaintiff Robinson to fill the position.

65.     On or about March 24, 2023, Plaintiff filed a class charge of disability discrimination with the EEOC specifically alleging class-wide federal as well as North Carolina/Arkansas state law claims on behalf of all similarly situated disabled applicants and/or applicants who were perceived as/regard as being disabled by Defendant who were denied employment by Defendant because of their disability and/or perceived disability.

66.     On May 3, 2023, the EEOC issued a Notice of Determination and Right to Sue.

### CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### Intentional Discrimination
### (Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.*)
### (On Behalf of Plaintiffs and all Class Members)

67.     Plaintiffs incorporate the preceding paragraphs 1-66 as alleged above.

68.     This Claim is brought by Plaintiffs, for themselves and on behalf of the Federal ADA Class they seek to represent.

69.     Plaintiffs have timely dual-filed Charges of Discrimination with the EEOC and the applicable state agencies in their respective states and have thus exhausted all required administrative remedies on behalf of themselves and all others similarly-situated. Plaintiffs also submitted to a medical physical exam as part of the application process with Defendant and Defendant did not dispute their medical qualifications based on a conflict of medical opinion and

therefore, Plaintiffs and all other similarly-situated Plaintiffs are not subject to the DOT's administrative processes.

70.     Plaintiffs and the putative Federal ADA Class, were qualified individuals with a disability and/or regarded as disabled by Defendant.

71.     Alternatively, Plaintiffs, and the putative Federal ADA Class, were perceived as and/or regarded as disabled by Defendant.

72.     Plaintiffs, and the putative Federal ADA Class, have, at all times material herein, suffered from a disability as defined under the ADA and that disabling condition rendered Plaintiffs and the putative class members as "persons with a disability" and/or regarded as being disabled by Defendant.

73.     Defendant's failure to hire Plaintiffs, and the putative Federal ADA class members, because of their disabilities and/or because Defendant regarded such persons as being disabled constitutes unlawful discrimination under the ADA.

74.     Defendant engages in an intentional, company-wide, and systematic policy, pattern, and/or practice of discrimination against applicants with sleep apnea and/or who they perceive/regard as having sleep apnea. Defendant has intentionally discriminated against Plaintiffs and the putative class in violation of the ADA, by, among other things:

a.     willfully utilizing a biased recruiting system for commercial Truck Drivers that excludes, deters, and discriminates against applicants with sleep apnea and/or who Defendant perceives as/regards as having sleep apnea;

b.     willfully lying to applicants with sleep apnea and/or who Defendant perceives/regards as having sleep apnea by telling them they are not being hired for commercial Truck Driver positions because Defendant is still considering other

16

applicants by Defendant's in-house recruiting department;

c.      using confidential medical record information obtained via DOT physicals to determine whether an applicant has sleep apnea, then failing to engage in the interactive process with that applicant/failing to provide a reasonable accommodation to that applicant and/or to determine whether that applicant has a BMI rating of 42 or greater, which causes Defendant to perceive/regard that applicant as having sleep apnea so Defendant could end that applicant's further progression through Defendant's application process;

d.      actively having managers, directors, officers and even the CEO/owner of Defendant's corporation coach, direct and encourage discrimination against applicants with sleep apnea and/or who Defendant perceives as having sleep apnea in violation of state/federal laws;

e.      actively having managers, directors, officers and even the CEO/owner of Defendant's corporation coach Defendant's recruitment department to lie to applicants about the real reason they were not being hired and on how to avoid potential EEOC charges of discrimination/lawsuits;

f.      retaliating against members of Defendant's recruitment department who objected to and/or refused to participate in Defendant's pattern and practice of discrimination;

g.      willfully implementing a discriminatory process for excluding applicants with sleep apnea and/or who are perceived by Defendant as having sleep apnea to exclude their applications from moving forward through the application process even if such applicants' sleep apnea could have been accommodated with prevailing/acceptable

treatments which are approved by the Department of Transportation for sleep apnea

for commercial Truck Driver positions; and

h.      willfully refusing to hire qualified applicants with sleep apnea and/or who

Defendant perceived as having sleep apnea for the commercial Truck Driver positions.

74.    These company-wide policies are intended to and do have the effect of denying

Plaintiffs and the putative Class Members employment opportunities because of their disability

and/or perceived disability. The discriminatory acts that constitute Defendant's pattern and/or

practice of discrimination have occurred both within and outside the liability periods in this case.

75.    As a direct result of Defendant's discriminatory policies and/or practices as

described above, Plaintiff and the putative class have suffered damages including, but not limited

to, lost past and future income, lost wages, compensatory damages, emotional distress/pain and

suffering damages, punitive damages, compensation, and benefits.

76.    The foregoing conduct constitutes illegal, intentional discrimination and unjustified

disparate treatment prohibited by the ADA.

77.    Plaintiffs request relief as hereinafter described.

## ALLEGATIONS REGARDING RELIEF

78.    Plaintiffs, Qwandairus Davis and Jasmine Robinson, and the putative Class

Members have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein,

and the injunctive relief they seek in this action is the only means of securing complete and

adequate relief. Plaintiffs and the putative Class Members the Plaintiffs seek to represent are now

suffering, and will continue to suffer, irreparable injury from Defendant's discriminatory acts and

omissions.

79.    Defendant's actions have caused and continue to cause Plaintiffs and the putative

Class Members substantial losses in employment opportunities, earnings, and other employment benefits.

80.     In addition, Plaintiff and the putative Class Members suffered and continue to suffer emotional distress, humiliation, embarrassment, and anguish, all to their damage in an amount according to proof.

81.     Defendant performed the acts herein alleged with intentional malice, willfulness, deceit, oppression, or fraud. Plaintiff and the putative Class Members are thus entitled to recover punitive damages in an amount according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the putative class pray for relief as follows:

(a)     Certification of the action as a nation-wide class action under the ADA;

(b)     Designation of Plaintiffs, Qwandairus Davis and Jasmine Robinson, as representatives of the nation-wide class action under the ADA;

(c)     Designation of Representative Plaintiffs' counsel of record as class counsel;

(d)     A declaratory judgment that the practices complained of herein are unlawful and violate the ADA;

(e)     A preliminary and permanent injunction against Defendant and its partners, officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in policies, patterns, and/or practices that discriminate against Plaintiff and the putative class because of their disability and/or perceived disabilities;

(f)     An order that Defendant institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees regardless

19

of their disability and/or perceived disabilities, and that it eradicate the effects of their past and present unlawful employment practices;

(g)     An order appointing a monitor to ensure that Defendant complies with the injunction provisions of any decree that the Court orders;

(h)     An order retaining jurisdiction over this action to ensure that Defendant complies with such a decree;

(i)     An order for front pay benefits to Plaintiffs and Class Members;

(j)     Back pay (including interest and benefits) for Plaintiffs and Class Members;

(k)     All damages sustained as a result of Defendant's conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

(l)     Exemplary and punitive damages in an amount commensurate with Defendant's ability to pay and to deter future conduct;

(m)     Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

(n)     Pre-judgment and post-judgment interest, as provided by law; and

(o)     Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

**SECOND CLAIM FOR RELIEF**
**Intentional Discrimination**
**(The North Carolina Persons with Disabilities Protection Act, N.C. G.S. §168A-1 _et seq_.)**
**(On Behalf of Plaintiff Robinson and all members of the North Carolina Class)**

82.     Plaintiff Robinson incorporates the preceding paragraphs 1-66 as alleged above.

83.     The PDPA claim is brought by Plaintiff Robinson, for herself and on behalf of the North Carolina Class she seeks to represent.

20

84.     Plaintiff Robinson dual-filed Charges of Discrimination with the EEOC and the applicable North Carolina state anti-discrimination agency and has, therefore, Plaintiff has exhausted all required administrative remedies on behalf of herself and all others similarly-situated. Plaintiff also submitted to a medical physical exam as part of the application process with Defendant and Defendant did not dispute Plaintiff's medical qualifications based on a conflict of medical opinion and therefore, Plaintiff and all other similarly-situated Plaintiffs are not subject to the DOT's administrative processes.

85.     Plaintiff Robinson, and the putative North Carolina Class members, were qualified individuals with a disability and/or regarded as disabled by Defendant.

86.     Alternatively, Plaintiff Robinson, and the putative North Carolina Class members, was perceived and/or regarded as disabled by Defendant.

87.     Plaintiff Robinson, and the putative North Carolina Class members, have, at all times material herein, suffered from a "disabling condition" as defined in N.C. Gen. Stat. § 168A-3(1). That disabling condition rendered Plaintiff Robinson, and the putative class members, "a person with a disability" and/or regarded as a disabled.

88.     Defendant's failure to hire Plaintiff Robinson, and the putative North Carolina Class members, because Defendant perceived and/or regarded them as persons with a disability constitutes unlawful discrimination under the North Carolina Persons with Disabilities Protection Act.

89.     As a direct and proximate result of the wrongful acts of Defendant, Plaintiff Robinson, and the putative North Carolina Class members, have sustained losses in earnings and benefits which she would have received except for Defendant's misconduct.

90.     Defendant had actual or constructive knowledge of the discriminatory conduct.

91.     Defendant's acts and omissions negatively affected one or more terms, conditions and/or privileges of Plaintiff Robinson's prospective employment, and the putative North Carolina Class members', prospective employment.

92.     Defendant engages in an intentional, company-wide, and systematic policy, pattern, and/or practice of discrimination against applicants with sleep apnea and/or who they perceive/regard as having sleep apnea. Defendant has intentionally discriminated against Plaintiff Robinson and the putative North Carolina Class in violation of the PDPA, by, among other things:

a.      willfully utilizing a biased recruiting system for commercial Truck Drivers that excludes, deters, and discriminates against applicants with sleep apnea and/or who Defendant perceives as/regards as having sleep apnea;

b.      willfully lying to applicants with sleep apnea and/or who Defendant perceives/regards as having sleep apnea by telling them they are not being hired for commercial Truck Driver positions because Defendant is still considering other applicants by Defendant's in-house recruiting department;

c.      using confidential medical record information obtained via DOT physicals to determine whether an applicant has sleep apnea, then failing to engage in the interactive process with that applicant/failing to provide a reasonable accommodation to that applicant and/or to determine whether that applicant has a BMI rating of 42 or greater, which causes Defendant to perceive/regard that applicant as having sleep apnea so Defendant could end that applicant's further progression through Defendant's application process;

d.      actively having managers, directors, officers and even the CEO/owner of Defendant's corporation coach, direct and encourage discrimination against applicants

22

with sleep apnea and/or who Defendant perceives as having sleep apnea in violation of state/federal laws;

e.      actively having managers, directors, officers and even the CEO/owner of Defendant's corporation coach Defendant's recruitment department to lie to applicants about the real reason they were not being hired and on how to avoid potential EEOC charges of discrimination/lawsuits;

f.      retaliating against members of Defendant's recruitment department who objected to and/or refused to participate in Defendant's pattern and practice of discrimination;

g.      willfully implementing a discriminatory process for excluding applicants with sleep apnea and/or who are perceived by Defendant as having sleep apnea to exclude their applications from moving forward through the application process even if such applicants' sleep apnea could have been accommodated with prevailing/acceptable treatments which are approved by the Department of Transportation for sleep apnea for commercial Truck Driver positions; and

h.      willfully refusing to hire qualified applicants with sleep apnea and/or who Defendant perceived as having sleep apnea for the commercial Truck Driver positions.

93.     These company-wide policies are intended to and do have the effect of denying Plaintiff and the North Carolina Class Members employment opportunities because of their disability and/or perceived disability. The discriminatory acts that constitute Defendant's pattern and/or practice of discrimination have occurred both within and outside the liability periods in this case.

94.     As a direct result of Defendant's discriminatory policies and/or practices as

described above, Plaintiff and the North Carolina Class have suffered damages including, but not limited to, lost past and future income, liquidated damages, punitive damages, compensation, and benefits.

95.     The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited by the PDPA.

96.     Plaintiff Robinson requests relief as hereinafter described.

## ALLEGATIONS REGARDING RELIEF

97.     Plaintiff, Jasmine Robinson, and the putative North Carolina Class Members have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief they seek in this action is the only means of securing complete and adequate relief. Plaintiffs and the putative North Carolina Class Members Plaintiff Robinson now seeks to represent are now suffering, and will continue to suffer, irreparable injury from Defendant's discriminatory acts and omissions.

98.     Defendant's actions have caused and continue to cause Plaintiff Robinson and the putative North Carolina Class Members substantial losses in employment opportunities, earnings, and other employment benefits.

99.     In addition, Plaintiff and the putative North Carolina Class Members suffered and continue to suffer emotional distress, humiliation, embarrassment, and anguish, all to their damage in an amount according to proof.

100.    Defendant performed the acts herein alleged with intentional malice, willfulness, deceit, oppression, or fraud. Plaintiff and the putative North Carolina Class Members are thus entitled to recover punitive damages in an amount according to proof.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the putative North Carolina Class pray for relief as follows:

(a)      Certification of the action as a class action under the PDPA;

(b)      Designation of Plaintiff, Jasmine Robinson, as representative of the North Carolina Class under the PDPA;

(c)      Designation of Representative Plaintiff Robinson's counsel of record as class counsel;

(d)      A declaratory judgment that the practices complained of herein are unlawful and violate the PDPA;

(e)      A preliminary and permanent injunction against Defendant and its partners, officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in policies, patterns, and/or practices that discriminate against Plaintiff and the class because of their disability and/or perceived disabilities;

(f)      An order that Defendant institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees regardless of their disability and/or perceived disabilities, and that it eradicate the effects of their past and present unlawful employment practices;

(g)      An order appointing a monitor to ensure that Defendant complies with the injunction provisions of any decree that the Court orders;

(h)      An order retaining jurisdiction over this action to ensure that Defendant complies with such a decree;

(i)      An order for front pay benefits to Plaintiffs and Class Members;

(j)     Back pay (including interest and benefits) for Plaintiffs and Class Members;

(k)     All damages sustained as a result of Defendant's conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

(l)     Exemplary and punitive damages in an amount commensurate with Defendant's ability to pay and to deter future conduct;

(m)     Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

(n)     Pre-judgment and post-judgment interest, as provided by law; and

(o)     Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

### THIRD CLAIM FOR RELIEF
### Intentional Discrimination
### (The North Carolina Equal Employment Practices Act, N.C. G.S. § 143-422.2, *et seq.*)
### (On Behalf of Plaintiff Robinson and all members of the North Carolina Class)

101.    Plaintiff Robinson incorporates the preceding paragraphs 1-66 as alleged above.

102.    The EEPA claim is brought by Plaintiff Robinson, for herself and on behalf of the North Carolina Class she seeks to represent.

103.    Plaintiff Robinson dual-filed Charges of Discrimination with the EEOC and the applicable North Carolina state anti-discrimination agency and has, therefore, Plaintiff has exhausted all required administrative remedies on behalf of herself and all others similarly-situated. Plaintiff also submitted to a medical physical exam as part of the application process with Defendant and Defendant did not dispute Plaintiff's medical qualifications based on a conflict of medical opinion and therefore, Plaintiff and all other similarly-situated Plaintiffs are not subject to the DOT's administrative processes.

104.    Plaintiff Robinson, and the putative North Carolina Class members, were qualified individuals with a disability and/or was regarded as being disabled by Defendant.

105.    Alternatively, Plaintiff Robinson, and the putative North Carolina Class members, were perceived and/or was regarded as being disabled by Defendant.

106.    Plaintiff Robinson, and the putative North Carolina Class members, have, at all times material herein, suffered from a "disability" as defined under EEPA. That disabling condition rendered Plaintiff Robinson, and the putative class members, "a person with a disability" and/or they were regarded as a disabled by Defendant.

107.    Defendant's failure to hire Plaintiff Robinson, and the putative North Carolina Class members, because of their disability and/or because Defendant regarded them as persons with a disability constitutes unlawful discrimination under EEPA.

108.    Defendant engages in an intentional, company-wide, and systematic policy, pattern, and/or practice of discrimination against applicants with sleep apnea and/or who they perceive/regard as having sleep apnea. Defendant has intentionally discriminated against Plaintiff Robinson and the putative North Carolina Class in violation of EEPA, by, among other things:

      a.    willfully utilizing a biased recruiting system for commercial Truck Drivers that excludes, deters, and discriminates against applicants with sleep apnea and/or who Defendant perceives as/regards as having sleep apnea;

      b.    willfully lying to applicants with sleep apnea and/or who Defendant perceives/regards as having sleep apnea by telling them they are not being hired for commercial Truck Driver positions because Defendant is still considering other applicants by Defendant's in-house recruiting department;

      c.    using confidential medical record information obtained via DOT physicals to

27

determine whether an applicant has sleep apnea, then failing to engage in the interactive process with that applicant/failing to provide a reasonable accommodation to that applicant and/or to determine whether that applicant has a BMI rating of 42 or greater, which causes Defendant to perceive/regard that applicant as having sleep apnea so Defendant could end that applicant's further progression through Defendant's application process;

d.      actively having managers, directors, officers and even the CEO/owner of Defendant's corporation coach, direct and encourage discrimination against applicants with sleep apnea and/or who Defendant perceives as having sleep apnea in violation of state/federal laws;

e.      actively having managers, directors, officers and even the CEO/owner of Defendant's corporation coach Defendant's recruitment department to lie to applicants about the real reason they were not being hired and on how to avoid potential EEOC charges of discrimination/lawsuits;

f.      retaliating against members of Defendant's recruitment department who objected to and/or refused to participate in Defendant's pattern and practice of discrimination;

g.      willfully implementing a discriminatory process for excluding applicants with sleep apnea and/or who are perceived by Defendant as having sleep apnea to exclude their applications from moving forward through the application process even if such applicants' sleep apnea could have been accommodated with prevailing/acceptable treatments which are approved by the Department of Transportation for sleep apnea for commercial Truck Driver positions; and

       h.      willfully refusing to hire qualified applicants with sleep apnea and/or who Defendant perceived as having sleep apnea for the commercial Truck Driver positions.

109.   These company-wide policies are intended to and do have the effect of denying Plaintiff and the North Carolina Class Members employment opportunities because of their disability and/or perceived disability. The discriminatory acts that constitute Defendant's pattern and/or practice of discrimination have occurred both within and outside the liability periods in this case.

110.   As a direct result of Defendant's discriminatory policies and/or practices as described above, Plaintiff and the North Carolina Class have suffered damages including, but not limited to, lost past and future income, liquidated damages, punitive damages, compensation, and benefits.

111.   The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited by EEPA.

112.   Plaintiff Robinson requests relief as hereinafter described.

## ALLEGATIONS REGARDING RELIEF

113.   Plaintiff, Jasmine Robinson, and the putative North Carolina Class Members have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief they seek in this action is the only means of securing complete and adequate relief. Plaintiffs and the putative North Carolina Class Members Plaintiff Robinson now seeks to represent are now suffering, and will continue to suffer, irreparable injury from Defendant's discriminatory acts and omissions.

114.   Defendant's actions have caused and continue to cause Plaintiff Robinson and the putative North Carolina Class Members substantial losses in employment opportunities, earnings,

29

and other employment benefits.

115.     In addition, Plaintiff and the putative North Carolina Class Members suffered and continue to suffer emotional distress, humiliation, embarrassment, and anguish, all to their damage in an amount according to proof.

116.     Defendant performed the acts herein alleged with intentional malice, willfulness, deceit, oppression, or fraud. Plaintiff and the putative North Carolina Class Members are thus entitled to recover punitive damages in an amount according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the putative North Carolina Class pray for relief as follows:

(a)     Certification of the action as a class action under EEPA;

(b)     Designation of Plaintiff, Jasmine Robinson, as representative of the North Carolina Class under EEPA;

(c)     Designation of Representative Plaintiff Robinson's counsel of record as class counsel;

(d)     A declaratory judgment that the practices complained of herein are unlawful and violate the EEPA;

(e)     A preliminary and permanent injunction against Defendant and its partners, officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in policies, patterns, and/or practices that discriminate against Plaintiff and the class because of their disability and/or perceived disabilities;

(f)     An order that Defendant institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees regardless

30

of their disability and/or perceived disabilities, and that it eradicate the effects of their past and present unlawful employment practices;

(g)     An order appointing a monitor to ensure that Defendant complies with the injunction provisions of any decree that the Court orders;

(h)     An order retaining jurisdiction over this action to ensure that Defendant complies with such a decree;

(i)     An order for front pay benefits to Plaintiffs and Class Members;

(j)     Back pay (including interest and benefits) for Plaintiffs and Class Members;

(k)     All damages sustained as a result of Defendant's conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

(l)     Exemplary and punitive damages in an amount commensurate with Defendant's ability to pay and to deter future conduct;

(m)     Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

(n)     Pre-judgment and post-judgment interest, as provided by law; and

(o)     Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## FOURTH CLAIM FOR RELIEF
### Intentional Discrimination
### (The Arkansas Civil Rights Act of 1993, AR Code § 16-123-107)
### (On Behalf of Plaintiff Davis and all members of the Arkansas Class)

117.     Plaintiff Davis incorporates the preceding paragraphs 1-66 as alleged above.

118.     The ARCA claim is brought by Plaintiff Davis, for himself and on behalf of the Arkansas Class he seeks to represent.

119.     Plaintiff Davis dual-filed Charges of Discrimination with the EEOC and the applicable Arkansas state anti-discrimination agency and, therefore, Plaintiff has exhausted all required administrative remedies. Plaintiff also submitted to a medical physical exam as part of the application process with Defendant and Defendant did not dispute Plaintiff's medical qualifications based on a conflict of medical opinion and therefore, Plaintiff and all other similarly-situated Plaintiffs are not subject to the DOT's administrative processes.

120.     Plaintiff Davis, and the putative Arkansas Class members, were qualified individuals with a disability and/or was regarded as being disabled by Defendant.

121.     Alternatively, Plaintiff Davis, and the putative Arkansas Class members, were perceived and/or was regarded as being disabled by Defendant.

122.     Plaintiff Robinson, and the putative Arkansas Class members, have, at all times material herein, suffered from a "disability" as defined under ARCA. That disabling condition rendered Plaintiff Robinson, and the putative class members, "a person with a disability" and/or they were regarded as a disabled by Defendant.

123.     Defendant's failure to hire Plaintiff Davis, and the putative Arkansas Class members, because of their disability and/or because Defendant regarded them as persons with a disability constitutes unlawful discrimination under ARCA.

124.     Defendant engages in an intentional, company-wide, and systematic policy, pattern, and/or practice of discrimination against applicants with sleep apnea and/or who they perceive/regard as having sleep apnea. Defendant has intentionally discriminated against Plaintiff Davis and the putative Arkansas Class in violation of ARCA, by, among other things:

        a.     willfully utilizing a biased recruiting system for commercial Truck Drivers that excludes, deters, and discriminates against applicants with sleep apnea and/or

who Defendant perceives as/regards as having sleep apnea;

b.        willfully lying to applicants with sleep apnea and/or who Defendant perceives/regards as having sleep apnea by telling them they are not being hired for commercial Truck Driver positions because Defendant is still considering other applicants by Defendant's in-house recruiting department;

c.        using confidential medical record information obtained via DOT physicals to determine whether an applicant has sleep apnea, then failing to engage in the interactive process with that applicant/failing to provide a reasonable accommodation to that applicant and/or to determine whether that applicant has a BMI rating of 42 or greater, which causes Defendant to perceive/regard that applicant as having sleep apnea so Defendant could end that applicant's further progression through Defendant's application process;

d.        actively having managers, directors, officers and even the CEO/owner of Defendant's corporation coach, direct and encourage discrimination against applicants with sleep apnea and/or who Defendant perceives as having sleep apnea in violation of state/federal laws;

e.        actively having managers, directors, officers and even the CEO/owner of Defendant's corporation coach Defendant's recruitment department to lie to applicants about the real reason they were not being hired and on how to avoid potential EEOC charges of discrimination/lawsuits;

f.        retaliating against members of Defendant's recruitment department who objected to and/or refused to participate in Defendant's pattern and practice of discrimination;

g.      willfully implementing a discriminatory process for excluding applicants with sleep apnea and/or who are perceived by Defendant as having sleep apnea to exclude their applications from moving forward through the application process even if such applicants' sleep apnea could have been accommodated with prevailing/acceptable treatments which are approved by the Department of Transportation for sleep apnea for commercial Truck Driver positions; and

h.      willfully refusing to hire qualified applicants with sleep apnea and/or who Defendant perceived as having sleep apnea for the commercial Truck Driver positions.

106.    These company-wide policies are intended to and do have the effect of denying Plaintiff and the Arkansas Class Members employment opportunities because of their disability and/or perceived disability. The discriminatory acts that constitute Defendant's pattern and/or practice of discrimination have occurred both within and outside the liability periods in this case.

107.    As a direct result of Defendant's discriminatory policies and/or practices as described above, Plaintiff and the Arkansas Class have suffered damages including, but not limited to, lost past and future income, liquidated damages, punitive damages, compensation, and benefits.

108.    The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited by ARCA.

109.    Plaintiff Davis requests relief as hereinafter described.

## ALLEGATIONS REGARDING RELIEF

110.    Plaintiff, Qwandairus Davis, and the putative Arkansas Class Members have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief they seek in this action is the only means of securing complete and adequate relief. Plaintiff and the putative Arkansas Class Members Plaintiff Davis now seeks to represent are now suffering,

and will continue to suffer, irreparable injury from Defendant's discriminatory acts and omissions.

111.    Defendant's actions have caused and continue to cause Plaintiff Davis and the putative Arkansas Class Members substantial losses in employment opportunities, earnings, and other employment benefits.

112.    In addition, Plaintiff and the putative Arkansas Class Members suffered and continue to suffer emotional distress, humiliation, embarrassment, and anguish, all to their damage in an amount according to proof.

113.    Defendant performed the acts herein alleged with intentional malice, willfulness, deceit, oppression, or fraud. Plaintiff and the putative Arkansas Class Members are thus entitled to recover punitive damages in an amount according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the putative Arkansas Class pray for relief as follows:

(a)    Certification of the action as a class action under ARCA;

(b)    Designation of Plaintiff, Qwandairus Davis, as representative of the Arkansas Class under ARCA;

(c)    Designation of Representative Plaintiff Robinson's counsel of record as class counsel;

(d)    A declaratory judgment that the practices complained of herein are unlawful and violate ARCA;

(e)    A preliminary and permanent injunction against Defendant and its partners, officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in policies, patterns, and/or practices that discriminate against Plaintiff and the class because of their disability and/or

perceived disabilities;

(f)     An order that Defendant institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees regardless of their disability and/or perceived disabilities, and that it eradicate the effects of their past and present unlawful employment practices;

(g)     An order appointing a monitor to ensure that Defendant complies with the injunction provisions of any decree that the Court orders;

(h)     An order retaining jurisdiction over this action to ensure that Defendant complies with such a decree;

(i)     An order for front pay benefits to Plaintiffs and Class Members;

(j)     Back pay (including interest and benefits) for Plaintiffs and Class Members;

(k)     All damages sustained as a result of Defendant's conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

(l)     Exemplary and punitive damages in an amount commensurate with Defendant's ability to pay and to deter future conduct;

(m)     Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

(n)     Pre-judgment and post-judgment interest, as provided by law; and

(o)     Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the ADA, the PDPA, EEPA

and ARCA, Plaintiffs demand a trial by jury in this action.

Dated: July 25, 2023.

Respectfully submitted by,

**/s/ Matthew R. Gunter, Esq**
MATTHEW R GUNTER, ESQ.
Florida Bar No.: 0077459
GREGORY SCHMITZ, ESQ. (PHV forthcoming)
Florida Bar No.:  0094694
Morgan & Morgan, P.A.
20 North Orange Avenue, 15th Floor
Orlando, Florida 32801
Telephone:  (407) 204-2170
Facsimile:  (407) 245-3401
E-mail: gschmitz@forthepeople.com
         mgunter@forthepeople.com
         rsaragih@forthepeople.com
         mbarreiro@forthepeole.com

37